**O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MICHAEL ROSS,

Plaintiff,

v.

MORGAN STANLEY SMITH BARNEY, LLC et al.,

Defendants.

Case No. 2:12-cv-09687-ODW(JCx)

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [21]**

## I. INTRODUCTION

Plaintiff Michael Ross originally filed his Complaint in Los Angeles County Superior Court, alleging that Defendants Morgan Stanley Smith Barney, LLC ("MSSB") and members of its management ("individual Defendants") retaliated against him by terminating his employment. Defendants removed the case to this Court. Ross amended his Complaint to omit any federal-law claims and now requests that the Court remand his case to state court. But since the individual defendants in this case were "fraudulently joined," the Court has diversity jurisdiction over Ross's action. The Court therefore **DENIES** Ross's Motion to Remand.[1]

/ / /

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

On July 26, 2010, Ross began his employment with MSSB in Beverly Hills, California as a Financial Advisor Associate ("FAA"). (SAC ¶ 21.) MSSB hired Ross as an at-will employee. (*Id.* Ex. F.) Ross was classified as an hourly, non-exempt employee. (*Id.* ¶ 24.)

During the next five months of his employment, MSSB required Ross to complete the FAA training program. (*Id.* ¶ 23.) In December 2010, Ross attended Performance Session 1 ("PS1"), an MSSB training program in Warren, New Jersey. (*Id.* ¶ 39.) Ross alleges that he was not paid statutorily mandated overtime for overnight travel to PS1. (*Id.* ¶ 38.)

In late December 2011, Ross contacted MSSB Human Resources and the National Development Center in New Jersey regarding overtime pay for his travel. (*Id.* ¶ 40.) He was told he had to resolve the issue with his branch manager, Defendant Cynthia Newman. (*Id.*)

Ross claims he then unsuccessfully attempted to reconcile the overtime issue with Newman and David Pogosyan, Vice President and Complex Service Manager.[2] (*Id.* ¶ 41.) Ross alleges that Newman and Pogosyan maintained that there was no MSSB policy authorizing payment of overtime for overnight travel. (*Id.*) Ross nevertheless included the questioned overtime in his timecard. But on January 5, 2011, both Newman and Pogosyan directed him to remove the overtime. (*Id.* ¶ 42.)

Ross was eventually able to locate the FAA overtime policy. (*Id.* ¶ 43; Ex. B.) Newman informed Ross he would be paid for 2.5 hours of overtime. (*Id.* ¶ 43.) But Ross claims that MSSB did not pay him the overtime hours until February 28, 2011, and that MSSB only paid him 60 percent of the overtime he was due. (*Id.* ¶ 47.)

On May 25, 2011, Defendant Robert L. Perry promoted Newman to the Regional Director position. (*Id.* ¶¶ 52–53.) Newman then left the Beverly Hills office, and Defendant Brian Krueger was selected as Newman's replacement.

[2] Ross did not name Pogosyan as a defendant in this case.

(*Id.* ¶¶ 52, 56.) Ross alleges that Newman, Krueger, and Perry conspired to "tortiously and pretextually terminate his employment at MSSB." (*Id.* ¶ 57.)

On August 23, 2011, Krueger informed Ross that Ross was being terminated, allegedly for being $850 under his July 2011 production requirement. (*Id.* ¶ 58.) Ross told Krueger that he had already met his third-quarter production requirement and that the monthly numbers were only a "guidepost." (*Id.*) Krueger suspended the termination for the rest of the day. (*Id.* ¶¶ 59–60.)

On August 24, 2011, Krueger informed Ross that the termination decision would stand. (*Id.* ¶ 60.) The next day, Ross contacted Andy Saperstein, MSSB's head of wealth management. (*Id.* ¶ 63.) Saperstein informed Ross that the termination decision was "completely local." (*Id.* ¶ 64.)

On September 2, 2011, MSSB filed a Uniform Termination for Securities Industry Registration ("Form U-5") with the National Securities Dealers Association ("NASD"). (*Id.* ¶ 65.) MSSB listed Ross's termination reason as "DID NOT MEET REQUIREMENTS OF TRAINING PROGRAM." (*Id.*; Ex. E.) Ross claims that this statement is false and was a pretext for terminating Ross for complaining about the unpaid overtime. (*Id.* ¶ 77.)

On October 12, 2012, Ross filed a First Amended Complaint in Los Angeles County Superior Court against MSSB, Newman, Krueger, and Perry. (ECF No. 1, Ex. A.) He alleged five causes of action: (1) wrongful termination in violation of public policy and the California Labor Code against MSSB; (2) intentional infliction of emotional distress against all Defendants; (3) breach of the implied covenant of good faith and fair dealing against MSSB; (4) unlawful termination and retaliation in violation of the Fair Labor Standards Act and the California Labor Code against all defendants; and (5) intentional interference with employment relationship and prospective economic advantage against Newman, Krueger, and Perry. (*Id.*)

On November 12, 2012, Defendants removed the case to this Court. On December 13, 2012, Ross moved for leave to file a Second Amended Complaint to

omit the federal Fair Labor Standards Act reference. (ECF No. 10.) Ross also requested that the Court *sua sponte* remand the case to California state court for lack of subject-matter jurisdiction. (*Id.*) Defendants opposed only the remand request. (ECF No. 11.)

On January 2, 2013, the Court granted Ross's motion for leave to amend but noted that omitting reference to the FLSA may not divest this Court of jurisdiction. (ECF No. 15.) Ross filed his Second Amended Complaint on January 14, 2013. (ECF No. 20.) Predictably, Ross included the same five causes of action as in his First Amended Complaint but omitted reference to the Fair Labor Standards Act in the fourth claim. Though he was not permitted to do so, he also alleged two additional causes of action: violations of the California Unfair Competition Law against all Defendants and failure to pay wages upon termination against MSSB. (*Id.*)

On January 17, 2013, Ross moved to remand the case to state court for lack of subject-matter jurisdiction. (ECF No. 21.) Defendants opposed the Motion on February 1, 2013. (ECF No. 24.) That Motion is now before the Court for decision.

## III. LEGAL STANDARD

Defendants may generally remove to the appropriate federal district court any "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). The propriety of removal depends on whether the case could have originally invoked federal-question jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) (citations omitted). The district court's "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

A litigant may challenge a removal decision through a motion to remand. A district court must remand a removed action "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

A district court may remand a removed action to state court involving pendent claims "upon a proper determination that retaining jurisdiction over the case would be inappropriate." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

When the plaintiff alleges no federal claims, a federal court only has subject-matter jurisdiction over the case if the parties are completely diverse and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The plaintiff's citizenship must be diverse from that of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

One exception to the rule of complete diversity is the judicially created doctrine of fraudulent joinder. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, [i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* (internal quotation marks omitted). In resolving this issue, the district court may "pierce the pleadings" and consider summary-judgment-type evidence. *Id.* at 1068.

## IV. DISCUSSION

Ross argues that this case should be remanded to Los Angeles County Superior Court because this Court lacks subject-matter jurisdiction. When Ross filed his Second Amended Complaint, he omitted any claims based on federal law. He also contends that Newman, Krueger, and Perry are California citizens, thus destroying any potential diversity jurisdiction.

Defendants respond that the individual Defendants are "fraudulently joined" because Ross cannot possibly sustain any claims against them. Defendants argue that

the individual defendants' citizenship should accordingly be ignored for the purposes of determining diversity. Since MSSB's corporate members are all citizens of either Delaware or New York, Defendants contend there is complete diversity. The Court therefore considers each cause of action against the individual Defendants and the parties' respective arguments in turn.

**A. Intentional Infliction of Emotional Distress**

For Ross to establish his intentional-infliction-of-emotional-distress claim ("IIED") against the individual Defendants, Ross would need to establish four elements: "(1) outrageous conduct by the defendant[s]; (2) the defendant[s'] intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant[s'] outrageous conduct." *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 394 (1970).

Though a plaintiff need not allege that he suffered physical injury as a result of the supposed IIED, courts recognize viable IIED claims absent injuries only when defendants engage in "extreme and outrageous intentional invasions of one's mental and emotional tranquility." *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 498 (1970).

Ross appears to base his IIED claim against the individual Defendants on the statements made on the Form U-5. Ross argues that he need only establish that the individual Defendants took some responsible part in the allegedly defamatory statements. He claims that Defendants' declarations purporting to establish that they had no part in MSSB's preparation of the form raise triable issues of credibility.

Defendants aver that their declarations prove they played no part in the Form U-5's preparation. They also argue that under California law, statements made on the form are absolutely privileged, thus precluding any possible IIED claim. As far as credibility, Defendants contend that Ross failed to adduce any evidence raising genuine credibility concerns.

/ / /

Although the California Supreme Court has not addressed the issue, the California Court of Appeal in *Fontani v. Wells Fargo Investments, LLC* held that statements made on a Form U-5 are absolutely privileged under California Civil Code section 47(b). 129 Cal. App. 4th 719, 734–35 (2005), *disapproved on other grounds*, *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 39 Cal. 4th 192 (2006). The Court accordingly finds that, as a matter of law, Ross cannot establish his IIED claims against the individual Defendants based on the allegedly defamatory statements on the Form U-5.

Ross's failure to establish that the individual Defendants played any part in the form's preparation undergirds this conclusion. All three individual Defendants submitted declarations swearing that they were unaware of the statements on the Form U-5 until they were served with the Complaint. A review of the form itself reveals two MSSB representatives responsible for its content—Amanda Wiltz and Shauna Myers—neither of whom are defendants in this case.

Moreover, even taking into account the totality of what allegedly transpired surrounding his termination, Ross cannot establish that the individual Defendants caused him "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher*, 10 Cal. App. 3d at 397. Personnel decisions—such as Ross's termination—are largely insufficient as a matter of law to support an IIED claim. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996).

Additionally, IIED claims based on personnel actions within the "normal risks of the employment relationship" are barred by the workers-compensation exclusivity doctrine. *Livitsanos v. Super. Ct.*, 2 Cal. 4th 744, 747 (1992); *see also* Cal. Labor Code § 3600(a). This principle applies even though a plaintiff was never physically injured. *Id.* at 756. Terminating an at-will employment relationship such as Ross's readily constitutes a normal risk of the employment relationship. Management personnel must constantly make hiring and firing decisions in order to properly run

any business. Absent outrageous conduct, these decisions cannot serve as the basis for an IIED claim under California law.

The Court therefore finds that Ross cannot establish his IIED claims against the individual Defendants on any ground he has alleged and **DENIES** the Motion to Remand on this ground.

**B. Retaliation**

Ross cites several statutes upon which he purports to base his retaliation claims against the individual Defendants. Defendants contend each one fails as a matter of law. The Court agrees.

To the extent that Ross attempts to bring a retaliation claim against the individual Defendants under California Labor Code section 98.7, that statute is inapplicable to his case. While section 98.7 does not compel administrative exhaustion, *Lloyd v. Cnty. of L.A.*, 172 Cal. App. 4th 320, 332 (2009), the statute only provides an aggrieved employee with the ability to file a complaint with the Labor Commissioner. Cal. Labor Code § 98.7(a). It is not a private right of action in itself but rather its own vehicle for handling an employment claim.

On the face of his Complaint, Ross also cites section 98.6, which is the section that does provide a private right of action for certain Labor Code violations. He seems to predicate his claimed right of action on an alleged violation of Labor Code section 1102.5. But that statute prohibits an employer from retaliating against an employee for "disclosing information to a government or law enforcement agency," Cal. Labor Code § 1102.5(b), or retaliating against an employee for "refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." *Id.* § 1102.5(c). There is no indication that Ross ever reported any alleged Labor Code violations to any government agencies or that MSSB requested that he participate in an activity that would violate applicable law.

/ / /

Interestingly, one of the headings in Ross's Reply states that "Plaintiff has Withdrawn Claims under Labor Code § 1102.5." (Reply 9.) It is unclear what Ross means by that statement. But by withdrawing reliance on section 1102.5, Ross further pulls the teeth out of any possible section 98.6 claim he might have had against the individual Defendants.

Ross in his Reply focuses on the final clause of section 98.6: "No person shall discharge an employee or in any manner discriminate against any employee . . . because of the exercise by the employee . . . on behalf of himself . . . of any rights afforded him or her." Cal. Labor Code § 98.6(a). Ross argues that the quoted language makes section 98.6 "totally applicable as a statutory prohibition against wrongful termination for exercise of any right protected by the Labor Code." (Reply 10.)

The only potentially viable Labor Code violation on which Ross could predicate a section 98.6 claim is MSSB's alleged failure to pay mandated overtime. *See* Labor Code § 510. But the California Supreme Court has held that individual corporate agents acting within the scope of their agency are not liable as "employer[s]" for the purposes of a section 1194 action, the statute authorizing a private right of action for overtime claims. *Martinez v. Combs*, 49 Cal. 4th 35, 66 (2010). There is no justified indication that the individual Defendants were doing anything but acting within the scope of their employment when they handled Ross's overtime claim.

Ross also mentions section 7287.8 of Title 2 of the California Code of Regulation as a possible basis for his retaliation claims against the individual Defendants. But Ross has not and cannot allege any violations of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900–96, the Act to which Ross's cited regulation applies. Cal. Code Regs. tit. 2, § 7287.8. An employee's entitlement to overtime is protected by the Labor Code, not FEHA. Labor Code § 510.

/ / /

Finally, Ross cites to Labor Code section 1054. That statute provides a private right of action and treble damages against any person who violates any provision of Labor Code sections 1050 to 1052. Section 1050 prohibits any person from making a misrepresentation regarding a discharged employee that prevents that person from obtaining subsequent employment. Labor Code § 1050. The only possible "misrepresentations" alleged here are those on the Form U-5. And, as discussed above, statements on a Form U-5 are absolutely privileged under Civil Code section 47(b). *Fontani*, 129 Cal. App. 4th at 734–35.

The Court finds that Ross cannot establish any retaliation claims against the individual Defendants and accordingly **DENIES** his Motion on this ground.

**C. Intentional-Interference Claims**

Ross seems to base his fifth cause of action for intentional interference with his employment relationship and prospective economic advantage on two grounds: (1) the individual Defendants allegedly procuring his termination; and (2) the supposedly defamatory statements on the Form U-5.

Defendants contend that any claim based on the statements on the Form U-5 fails on absolute-privilege grounds. Defendants also argue that since all of Ross's other employment claims against the individual Defendants fail, so too do the interference claims. To the extent that Ross bases his interference claims on the Form U-5, Defendants correctly assert that those claims fail as a matter of law. *Fontani*, 129 Cal. App. 4th at 734–35.

California law prohibits third parties from intentionally interfering with any contract. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The elements of a claim for intentional interference are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Id.*

California courts have recognized that a plaintiff may bring a claim for intentional interference with economic advantage even if the plaintiff was only employed at will. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1149 (2004); *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 448–49 (1993). In the case of at-will employees, the plaintiff must further "plead and prove that the defendant engaged in an independently wrongful act—i.e., an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Reeves*, 33 Cal. 4th at 1152–53 (internal quotation marks omitted). But an "act is not independently wrongful merely because defendant acted with an improper motive." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003). This requirement is additional to those of the underlying interference claim. *Id.* at 1152.

Since Ross failed to allege any independently wrongful acts by the individual Defendants—such as any statutory or common-law violations—he cannot establish his intentional-interference-with-employment-relationship claims against the individual Defendants. At best, Ross could show that the individual Defendants acted improperly on some basic social level. But that is insufficient as a matter of law to establish any interference-based tort against them.

Ross's intentional-interference-with-prospective-economic-advantage claim fails for the same reason. The torts of intentional interference with an employment relationship of an at-will employee and intentional interference with prospective economic advantage share the same independently-wrongful-act requirement. *Reeves*, 33 Cal. 4th at 1152–53. Since Ross cannot show that the individual Defendants committed any independent statutory or common-law violations, both claims falter.

The Court **DENIES** Ross's Motion with respect to the interference claims.

**D. Unlawful Competition Law**

Since the Court finds that Ross cannot establish any of his claims against the individual Defendants, his Unfair Competition Law claim similarly fails. *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a

derivative UCL claim also fails."); *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494 (1999) ("In effect, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL."). The Court also notes that Ross was granted leave *only* to remove his federal claims, and not to allege new ones like the UCL and failure-to-pay-overtime claims.

**E. Diversity and Amount in Controversy**

MSSB is a limited-liability company. (Guth Decl. ¶ 3.) For the purposes diversity jurisdiction under 28 U.S.C. § 1332(a), a court determines the citizenship of a limited-liability company by reference to the citizenship of each of its members.[3] *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Corporate defendants are citizens of the states in which they are incorporated and have their principal place of business. 28 U.S.C. § 1332(c)(1).

At the end of its organizational structure, MSSB's ultimate members are Morgan Stanley Commercial Financial Services, Inc.; MS Financing, Inc.; Morgan Stanley Domestic Holdings, Inc.; Morgan Stanley International Holdings, Inc.; Citigroup, Inc.; and MS Alpha Holdings, LLC. (*Id.* ¶¶ 4–12.) All of those entities are incorporated and have their principal places of business in either New York or Delaware. (*Id.*)

Since the Court finds that Ross cannot establish any of his claims against the individual Defendants, their citizenship is irrelevant under the fraudulent-joinder doctrine for the purpose of analyzing diversity jurisdiction. The Court therefore finds that Ross and MSSB are diverse.

The Court likewise finds that the amount in controversy in this case exceeds the sum or value of $75,000, exclusive of interest and costs. The Ninth Circuit has held that "if the complaint alleges damages in excess of the federal amount-in-controversy requirement, then the amount-in-controversy requirement is presumptively satisfied

---

[3] Ross does not address either diversity or amount in controversy in his Motion or Reply. Mindful that Ross is representing himself, the Court addresses these issues *sua sponte*.

unless it appears to a legal certainty that the claim is actually for less than the jurisdictional minimum." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007) (emphasis omitted) (internal quotation marks omitted).

Ross alleges in his Second Amended Complaint that he has been damaged in the amount of $1.75 million dollars as a result of the allegedly wrongful termination. (SAC ¶ 90.) Defendants agree that, as a matter of pleading, the amount-in-controversy requirement is satisfied in this case. The Court cannot say that it appears "to a legal certainty" that the amount in controversy is less than $75,000.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

March 7, 2013

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**